UNITED STATES BANKRUPTCY COURT
FOR THE
WESTERN DISTRICT OF KENTUCKY

| | | |
|---|---|---|
| IN RE: | ) | |
| DAVID SPRINGER and | ) | CASE NO. 15-33254 |
| KELLY SPRINGER | ) | |
| | ) | |
| DEBTORS | ) | |
| | ) | |

| | | |
|---|---|---|
| DAVID SPRINGER AND | ) | |
| KELLY SPRINGER | ) | |
| | ) | |
| PLAINTIFFS | ) | |
| | ) | |
| VS. | ) | ADVERSARY PROCEEDING |
| | ) | NO.16-3007 |
| | ) | |
| RNBJ RTO LLC | ) | |
| d/b/a/ Buddy's Home Furnishings | ) | |
| c/o Agent CT Corporation System | ) | |
| 306 West Main Street | ) | |
| Suite 512 | ) | |
| Frankfort, Kentucky 40601 | ) | |
| | ) | |
| DEFENDANT | ) | |

**MEMORANDUM OPINION**

This matter is before the Court after the conclusion of a trial on the merits of the cause of action under 11 U.S.C. § 362 brought by Plaintiffs, David Springer and Kelly Springer, against the Defendant, RNBJ RTO LLC, d/b/a Buddy's Home Furnishings ("Buddy's"). In their complaint, the Plaintiffs seek damages for Buddy's alleged willful violations of the automatic stay imposed by 11 U.S.C. § 362. Both the Plaintiffs and a representative of Buddy's appeared at trial and were represented by counsel. At the trial, the Plaintiffs called several witnesses and admitted several exhibits into evidence. Buddy's neither called a witness nor admitted any exhibits on its own behalf. At issue in this case is whether Buddy's violated the automatic stay under 11 U.S.C. §362(a), and,

if so, whether the Plaintiffs are entitled to damages under § 362(k). The Court, having considered the pleadings, evidence, and arguments of counsel, finds the Plaintiffs have successfully demonstrated that Buddy's willfully violated the automatic stay and are entitled to damages. The Court enters the following Findings of Fact and Conclusions of Law pursuant to Fed. R. Bank. P. 7052.

## FINDINGS OF FACT

1. Prior to filing this Chapter 13 case, on October 25, 2014, the Plaintiffs entered into two rental agreement with Buddy's for the rental of a living room suite and a television.

2. In the rental agreements, the Plaintiffs setup weekly automatic payments of $89.43 to pay Buddy's out of David and Kelly Springer's joint bank account. This amount represented the total payment on the two rental agreements.

3. On October 7, 2015, the Plaintiffs filed a voluntary petition under Chapter 13, case number 15-33254, along with accompanying schedules, statement of social security number, and a Chapter 13 plan.

4. Buddy's was listed as a creditor in the Plaintiffs' schedules.

5. Buddy's received notice of the bankruptcy filing through the October 10, 2015 Notice of Chapter 13 Bankruptcy Case, Meeting of Creditors & Deadlines. This Notice was mailed to Buddy's at the address of 11330 Preston Hwy #1, Louisville, Kentucky 40229. Buddy's has not and does not contest that it received notice of the bankruptcy case.

6. After the Plaintiffs filed bankruptcy, Buddy's continued to automatically deduct $89.43 from the plaintiffs' checking account.

7. Buddy's deducted payments from the Plaintiffs' bank account on October 13, 2015, October

2

   19, 2015, October 26, 2015, November 2, 2015, and November 9, 2015.  Buddy's took five post petition payments in the total amount of $447.15.

8. On or around November 13, 2015, counsel for the Plaintiffs, Raphael Whitford, contacted Buddy's and requested that Buddy's stop taking payments from the banking account, and to return any money that was taken out post-petition.

9. While Buddy's took no further payments, Buddy's refused to refund the funds taken post petition.  As of the date of the trial, Buddy's has still failed to return the funds.

10. On November 16, 2015, the Plaintiffs' meeting of creditors was held, and the Plaintiffs' Chapter 13 plan was confirmed.

11. Buddy's contacted David Springer on three separate occasions to try to recover the rented furniture.

12. Buddy's called David Springer on November 17, 2015, November 19, 2015, and on December 10, 2015.  During these conversations, Buddy's told David Springer that since the agreement at issue was a lease, Buddy's could recover the rented furniture.

13. Maria Springer, the Plaintiffs' daughter, testified that on November 21, 2015, Buddy's sent a crew to the Plaintiffs' house to recover the furniture.  Buddy's was, however, unsuccessful in its attempt to recover the furniture.

14. Two days later, on November 23, 2015, Buddy's telephoned Kelly Springer.  This communication was made to Kelly Springer on her cell phone while she was at work.  While she suffered no medical problems, Kelly Springer testified that the call upset and embarrassed her.

15. On November 23, 2015, counsel for the Plaintiffs, Ross Neuhauser, spoke to an individual

named Allen Pierce of Buddy's on the phone, and advised of the stay violations, and asked for a refund of the post-petition payments. Mr. Pierce took the position that because the contract in question was a lease, they were entitled to pick up the furniture. Counsel for Plaintiffs suggested that Mr. Pierce and Buddy's contact an attorney.

16. In the Plaintiffs' main bankruptcy case, Buddy's did not file a motion for relief from the automatic stay. Nor did it file a motion to assume or reject a lease or executory contract. Finally, at no time has Buddy's filed a motion for set off.

## CONCLUSIONS OF LAW

This Court has jurisdiction over the parties to and the subject matter of this Adversary pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O).

The filing of a bankruptcy petition triggers the protections of the automatic stay under 11 U.S.C. § 362(a). Section 362(a) prohibits creditors from attempting or continuing to collect most debts from the debtor. It also prohibits any acts "to obtain possession of property of the estate or of property from the estate or to exercise control over property of the bankruptcy estate." § 362(a)(3).

The automatic stay stops all collection efforts, all repossessions, and all foreclosure actions. "When a bankruptcy petition is filed, an automatic stay operates as a self-executing injunction" that prevents creditors from pursuing collection efforts against the debtor or the property of the debtor's estate for pre-petition debts. *Campbell v. Countrywide Home Loans, Inc.*, 545 F.3d 348, 354-55 (5th Cir. 2008); *Smith v. First Am. Bank ( In re Smith)*, 876 F.2d 524, 526 (6th Cir. 1989). "It is elementary that the automatic stay comes into existence automatically and immediately upon the

filing of a petition in bankruptcy." *Webb Mtn, LLC v. Exec. Realty P'ship, L.P. ( In re Webb Mtn., LLC)*, 414 B.R. 308, 335 (Bankr. E.D. Tenn. 2009) (internal quotation marks and citations omitted). The purpose behind the automatic stay in § 362(a) is to allow a debtor a "breathing spell." *Templeton Mortg. Corp. v. Chesnut (In re Chesnut)*, 422 F.3d 298, 301 (5th Cir. 2005).

Section 362(k)(1) provides that "an individual injured by any willful violation of a stay ... shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."  11 U.S.C. § 362(k)(1); *In re Baer*, 2012 WL 2368698 (6th Cir. BAP 2012). An individual seeking damages under § 362(k) must prove, by a preponderance of the evidence, that damages were "proximately caused by and reasonably incurred as a result of the violation of the automatic stay." *Grine v. Chambers (In re Grine)*, 439 B.R. 461, 471 (Bankr. N.D. Ohio 2010) (*citing Archer v. Macomb Cnty. Bank*, 853 F.2d 497 (6th Cir. 1988)). A debtor must be able to demonstrate the amount of damages incurred with a reasonable degree of certainty and must support this claim with evidence. *Baer, supra*.

"A violation is willful if the creditor deliberately carried out the prohibited act with knowledge of the debtor's bankruptcy case." *In re Printup*, 264 B.R. 169, 173 (Bankr. E.D. Tenn. 2001). A specific intent to violate the stay is not required, or even an awareness by the creditor that its conduct violates the stay. It is sufficient that the creditor knows of the bankruptcy and engages in deliberate conduct that is a violation of the stay. *In re Webb*, 2012 WL 2329051, at *15 (6th Cir. BAP 2012). Moreover, where there is actual notice of the bankruptcy it must be presumed that the violation was deliberate or intentional. *Id.*

Additionally, a "willful violation of the stay can be found from an act of omission and does not require an act of commission." *In re Banks*, 253 B.R. 25, 31 (Bankr. E.D. Mich. 2000).

5

Therefore, if a creditor has an affirmative duty to halt a collection action, failure to do so can result in a willful violation of the stay. *Id.*

A creditor's good faith belief that its intentional actions did not violate the automatic stay is not a defense to a § 362(k) action. *TranSouth Fin'l Corp. v. Sharon (In re Sharon)*, 234 B.R. 676, 688 (6th Cir. BAP 1999). This is true even if the creditor's belief is based on "a mistake of law or legal dispute regarding its rights." *In re Johnson*, 253 B.R. 857, 861 (Bankr. S.D. Ohio 2000); *Fleet Mortg. Group, Inc.*, 196 F.3d at 268-69 ("A good faith belief in a right to the property is not relevant to a determination of whether the violation was willful."). All of the facts in this case clearly demonstrate willful violations of the automatic stay.

Once a court determines that a party has willfully violated the automatic stay, the court is required by § 362(k)(1) to impose sanctions in an amount equal to a debtor's actual damages. Debtors are also under a duty to mitigate their damages. As such, claims for fees incurred in the prosecution of an unnecessary motions are not recoverable. *See Grine*, 439 B.R. at 471 ("If litigation is unnecessary to afford a complete remedy to a debtor, then the fees for commencing and prosecuting an action will fail...."). Stated another way:

> Although the Bankruptcy Code does not require a debtor to warn his creditors of existing violations prior to moving for sanctions, the debtor is under a duty to exercise due diligence in protecting and pursuing his rights and in mitigating his damages with regard to such violations. This duty includes such cooperation as might reasonably and promptly mitigate damages.

*Hutchings v. Ocwen Fed. Bank, FSB (In re Hutchings)*, 348 B.R. 847, 906 (Bankr. N.D. Ala. 2006) (citations omitted).

In this case, the Court finds the Plaintiffs took all the necessary steps to avoid this litigation. Counsel for the Plaintiffs made several phone calls to Buddy's, as well as sent correspondence to

6

Buddy's to inform it of the bankruptcy filing and to avoid the filing of this action. Despite the Plaintiffs' best efforts, Buddy's continued to hold the Plaintiffs' funds, and continued to try to recover the rental property. Consequently, the Plaintiffs had no choice but to file this adversary proceeding.

At trial, Buddy's made several arguments that this was a lease and somehow this excluded them from the normal operations of § 362. It was mistaken. Buddy's argued that since this was a lease, the furniture did not belong to the Plaintiffs and, therefore, they were not trying to collect against the Plaintiffs' property. Buddy's is either unaware of 11 U.S.C. § 541, or greatly underestimates its scope.

The filing of a bankruptcy petition creates a bankruptcy estate. Under the Bankruptcy Code, the bankruptcy estate is comprised of "all legal or equitable interests of the debtor in property *as of the commencement of the case...* ." 11 U.S.C. § 541(a)(1) (emphasis added); *United States v. Whiting Pools, Inc.,* 462 U.S. 198, 203, (1983) ("estate is comprised of . . . all legal or equitable interests of the debtor in property as of the commencement of the case").

Here, the Plaintiffs' rental interest in the furniture is clearly property of the bankruptcy estate. Ownership, *per se*, is not a prerequisite for property being included in the bankruptcy estate. This is true as to rental real property, leased vehicles, and to rented furniture as present here.

Any creditor, even one who is merely leasing property to debtors, must comply with the Bankruptcy Code if it seeks money or property from debtors. At no time during the pendency of this case did Buddy's file a motion for stay relief or seek a determination that the furniture was not property of the estate. At no time did Buddy's file a motion to assume or reject the furniture lease. Likewise, if Buddy's believed it was entitled to a set off, Buddy's was completely free to file the

7

appropriate motion before this Court. What Buddy's could NOT do, however, was to act outside the Bankruptcy Code and retain funds improperly and attempt to recover leased property post petition.

Buddy's knew of the automatic stay, and took deliberate actions in violation of the stay. Each post petition debit from the Plaintiffs' checking account constituted a violation of the automatic stay. The refusal to return the debited funds to the Plaintiffs constituted a violation of the automatic stay. Each phone call to the Plaintiffs constituted a violation of the automatic stay. Finally, the trip to the Plaintiffs house to collect the property violated the automatic stay.

This takes the Court to the issue of what damages to award the Plaintiffs for Buddy's violations of the automatic stay. As stated previously, § 362(k)(1) provides that "an individual injured by any willful violation of a stay ... shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k)(1). Once a court determines that a party has willfully violated the automatic stay, the Court is required by § 362(k)(1) to impose sanctions in an amount equal to the amount of actual damages. *In re Webb*, 2012 WL 2329051, at \*17 (6th Cir. BAP 2012).

1. Plaintiffs' Actual Damages

First and foremost, the Plaintiffs will be awarded $447.15 that Buddy's wrongfully debited from the Plaintiffs' checking account post petition. These funds should have been returned long before this matter ever came to trial.

2. Emotional Injury

The Plaintiffs also requested damages for the emotional injury allegedly suffered by Kelly Springer. At trial, counsel for the Plaintiffs suggested a damage award of approximately $1,000 for

emotional distress.  While it is clear that violations of the stay may result in compensable emotional distress, the Court finds the evidence in this case does not support such a finding.  Kelly Springer testified that she was embarrassed by the phone call to her place of work.  Yet, she also testified that she took the call off of speaker once she knew the caller was Buddy's.  Moreover, she could not testify if anyone at her place of business heard the phone call.  Finally, Mrs. Springer testified she neither sought nor received any medical or psychological treatment for her emotional troubles.  "[H]urt feelings, anger and frustration are part of life, and are not the types of emotional harm that could support an award of damages."  *Collier v. Hill (In re Collier)*, 410 B.R. 464, 477 (Bankr. S.D. Tex. 2009) (citation omitted).  Here, the Plaintiffs failed to show a specific discernable injury to their emotional state.  Accordingly, the Court declines to award any damages for emotional distress.

3.      Attorneys' Fees, Costs, and Expenses

Attorney's fees are a component of the actual damages recoverable under the language of § 362(k)(1).  *Cousins v. CitiFinancial Mortg. Co. (In re Cousins)*, 404 B.R. 281, 290 (Bankr. S.D. Ohio 2009).  Those fees can include fees incurred out of court, as when a debtor retains an attorney to call or write a creditor to demand that it end its actions violating the stay.  If those efforts fail, a debtor can also incur attorney's fees in court by pursuing an action to end a stay violation and to recover damages.  *In re Schwartz-Tallard*, 803 F.3d 1095, 1099 (9th Cir. 2015) (*overruling Sternberg v. Johnston*, 595 F.3d 937 (9th Cir. 2010)).  If litigation is necessary to afford a complete remedy to a debtor, § 362(k) allows a judgment for the attorneys' fees and costs incurred in prosecuting it.  *Grine v. Chambers (In re Grine)*, 439 B.R. 461, 471 (Bankr. N.D. Ohio 2010).  As such, both pre-litigation attorney's fees and attorney's fees incurred after the filing of a complaint are compensable under § 362(k).

9

The amount of attorney's fees a party seeks to recover under § 362(k) must be reasonable. *In re Russell*, 441 B.R. 859, 863 (Bankr. N.D. Ohio 2010). In awarding attorney's fees under § 362(k)(1), a court should determine whether the fees are reasonable based on the "customary compensation charged by comparably skilled practitioners" and whether the fees "bear a reasonable relationship to the amount in controversy." *Id.* Plaintiffs bear the burden of proving the reasonableness of these fees.

The Plaintiffs seek recovery of attorney's fees and expenses billed by Whitford & Neuhauser in the amount of $8,506.10 that was incurred from November 13, 2015 to July 27, 2017. Within this amount, the Plaintiffs requests attorney's fees for the time spent preparing for and at trial.

In order to determine whether the fees set forth in the Plaintiffs' Counsels' Affidavit Regarding Attorney Fees and Costs (the "Affidavit") are reasonable, this Court employs the "lodestar" method, which requires the Court to multiply the prevailing hourly rate in the community by the number of hours that an attorney would reasonably expend prosecuting the adversary proceeding. The Supreme Court has made it clear that the lodestar method of fee calculation is the method by which federal courts should determine reasonable attorney's fees under federal statutes which provide for such fees. *See, e.g., Pennsylvania v. Delaware Valley Citizens Council for Clean Air*, 483 U.S. 711, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987) (lodestar method used to calculate fees under Clear Air Act); *In re Boddy*, 950 F.2d 334, 337 (6th Cir. 1991).

In this case, the Affidavit reflects that between November 13, 2015 and July 27, 2017, the Whitford & Neuhauser billed 33.4 hours of work at the hourly rate of $250.00 (totaling $8,350.00). The Affidavit also includes a deposition expense of $156.10. As a result, Plaintiffs are seeking $8,350.00 for attorney's fees and $156.10 for expenses, for a total of $8,506.10.

Whitford & Neuhauser exercised proper billing judgment with respect to the billing entries. The Court finds the time spent by Whitford & Neuhauser reasonable. The Court further finds that the hourly rate charged by the Whitford & Neuhauser is also reasonable. After considering Buddy's Response to Affidavit Regarding Attorney Fees and Costs, and performing an exhaustive review of the Affidavit, the Court finds that the "lodestar" amount is $8,350.00, and that this amount is reasonable, fair, and appropriate. In addition, the Court finds that the $156.10 expense is likewise reasonable. Therefore, the Plaintiffs are entitled to a total of $8,506.10 for attorneys' fees and expenses.

4.   Punitive Damages

In addition to actual damages, § 362(k)(1) also allows for an award of punitive damages, in appropriate circumstances. 11 U.S.C. § 362(k)(1). To obtain punitive damages, the party must show that the "creditor's conduct was 'egregious, vindictive, or intentionally malicious.'" *In re Baer*, 2012 WL 2368698 at *10 (6th Cir. BAP 2012) (*quoting In re Bivens*, 324 B.R. 39, 42 (Bankr. N.D. Ohio 2004)). While proof of an overt wrongful intent is not required, it must be shown that the creditor acted in bad faith or otherwise undertook its actions in reckless disregard of the law. *Id.*

The evidence showed that Buddy's is in the business of renting furniture. As with any rental business, some of those renters are bound to file for protection under the bankruptcy laws. And yet, despite having access to both corporate counsel and local counsel, Buddy's apparently does not have any effective bankruptcy procedure in place to stop automatic debit withdrawals or to instruct its store managers to cease attempts to recover rented property. Buddy's should have a policy in place to protect debtors and itself when its renters file for bankruptcy. That Buddy's did not understand the ramifications of the bankruptcy filing is no excuse.

These events, viewed in the aggregate, show a reckless disregard for the Plaintiffs' rights under the Bankruptcy Code. Buddy's retention of the debited funds and its repeated efforts to repossess the furniture from the Plaintiffs despite its knowledge of their bankruptcy filing demonstrates an arrogant defiance of the bankruptcy stay and constitutes egregious conduct. All of Buddy's actions and failures to act, taken together, show that Buddy's acted with reckless disregard of the law. That reckless disregard establishes that an award of punitive damages is appropriate. *In re Bilfield*, 494 B.R. 292, 305 (Bankr. N.D. Ohio 2013).

For the ten (10) stay violations (five (5) post petition debits, four (4) post petition phone calls, and one (1) excursion to the Plaintiffs' residence), the Court will award $5,000.00 in punitive damages.

## CONCLUSION

Based on the foregoing, the Court concludes that the Plaintiffs have successfully demonstrated that Buddy's willfully violated the automatic stay. The Court further finds that the Plaintiffs are entitled to damages in the amount of $13,953.25. This amount consists of $447.15 in actual damages, $8,506.10 in attorney's fees and costs, and $5,000.00 in punitive damages. The Court will conclude with a note that it is aware that this is not Buddy's first run-in with the Bankruptcy Code and the Bankruptcy Court. Apparently, its previous failures have not impressed upon Buddy's that it needs to revise its bankruptcy procedures. Should Buddy's continue to engage in this type of conduct, future sanctions may become much more severe. A final judgment consistent with this Opinion will be entered in accordance with Fed. R. Bankr. P. 7054 and 7058.

Alan C. Stout
United States Bankruptcy Judge
Dated: August 16, 2017

UNITED STATES BANKRUPTCY COURT
FOR THE
WESTERN DISTRICT OF KENTUCKY

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| DAVID SPRINGER and | ) | CASE NO. 15-33254 |
| KELLY SPRINGER | ) | |
| | ) | |
| DEBTORS | ) | |
| | ) | |
| DAVID SPRINGER and | ) | |
| KELLY SPRINGER | ) | |
| | ) | |
| PLAINTIFF | ) | |
| | ) | |
| VS. | ) | ADVERSARY PROCEEDING |
| | ) | NO.16-3007 |
| | ) | |
| RNBJ RTO LLC | ) | |
| d/b/a/ Buddy's Home Furnishings | ) | |
| c/o Agent CT Corporation System | ) | |
| 306 West Main Street | ) | |
| Suite 512 | ) | |
| Frankfort, Kentucky 40601 | ) | |
| | ) | |
| DEFENDANTS | ) | |

## JUDGMENT

Pursuant to the Court's Memorandum entered this date and incorporated herein by reference, and the Court being otherwise sufficiently advised,

**IT IS ORDERED** that judgment is rendered in favor of the Plaintiffs, David Springer and Kelly Springer and against the Defendant, RNBJ RTO LLC d/b/a Buddy's Home Furnishings in the amount of $13,953.25.

This is a final and appealable order and there is no just reason for delay.

_____
Alan C. Stout
United States Bankruptcy Judge

Dated: August 16, 2017